## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## DETROIT DIVISION

| | | |
|---|---|---|
| G.W. & J.R. o/b/o A.W. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CAUSE NO.:   2:21-cv-11384 |
| | ) | |
| CHARYL STOCKWELL ACADEMY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs G.W. & J.R. o/b/o A.W, by counsel, for its action for damages and injunctive

relief against Defendant Charyl Stockwell Academy ("CSA"), hereby allege and state as follows:

### I.   INTRODUCTION

1.      Plaintiff A.W. ( "Student"), by and through his parents and next friends, G.W. and

J.R. ("Parents") (collectively "Plaintiffs"), brings this civil action against Defendant Charyl

Stockwell Academy ("CSA"), following receipt of an adverse administrative decision from a due

process complaint filed under Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§

1400 *et seq.* Plaintiffs contend that CSA denied the Student a free appropriate public education

("FAPE") in the least restrictive environment ("LRE"), as mandated by IDEA, 20 U.S.C. §

1412(a)(5), and the federal regulations promulgated pursuant to the IDEA, 34 C.F.R. §§ 300.114,

300.116. Plaintiffs further contend that the conclusion of the Administrative Law Judge ("ALJ")

that Plaintiffs did not establish such violations of the IDEA was based upon erroneous factual

findings and improper legal conclusions unsupported by the evidence or established law.  Plaintiffs

also contend that CSA violated the anti-discrimination provisions of Section 504 of the

Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.* ("Section 504") and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("Title II").

## II.    JURISDICTION AND VENUE

2.      Jurisdiction is conferred upon this Court by 20 U.S.C. § 1415(i)(2)(A) and 1415(i)(3)(A), which provide the district courts of the United States with jurisdiction to review administrative decisions rendered under IDEA, without regard to the amount in controversy.

3.      This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331, based upon the federal question raised herein, and 28 U.S.C. § 1343, because this action is brought to vindicate Plaintiffs' civil rights under the IDEA. There is a present and actual controversy between the parties to this action. To the extent required by law, Plaintiffs have exhausted their administrative remedies as to the issues in this action.

4.      As part of its authority under § 1415(i)(2)(C)(iii), the Court has the authority to "award any relief it deems appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii)..

5.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), as Plaintiffs reside within the Eastern District of Michigan and all events and omissions giving rise to this Complaint occurred in this district.

6.      This action is brought in a timely manner pursuant to IDEA, 20 U.S.C. §1415(i)(2)(B), and the Michigan Administrative Rules for Special Education (MARSE), Mich. Admin. R. 340.1724f(4), which provide a 90-day period from the mailing of the Decision and Order to file this action, which was mailed on March 15, 2021.

7.      Plaintiffs have exhausted all remedies available to them under IDEA as required by 20 U.S.C. § 1415(i)(2).

## III.  PARTIES

8.      The Student is a ten year old boy.

9.     The Student resides with his parents, G.W. and J.R., in Detroit, Michigan.

10.    CSA is a public school located in Howell, Michigan.

## IV.  FACTS

11.    The Student suffers from Pediatric Autoimmune Neuropsychiatric Disorders Associated with Streptococcal Infections ("PANDAS") and Pediatric Acute-onset Neuropsychiatric Syndrome ("PANS") (collectively "PANDAS/PANS").

12.    Pursuant to the Individuals with Disabilities Education Act ("IDEA") and as a result of his PANDAS/PANS, the Student was found eligible for special education and related services by the Detroit Public Schools Community District ("DPSCD") in the area of Other Health Impairment ("OHI").

13.    Upon being found eligible for special education and related services, DPSCD created an Individualized Education Program ("IEP") for the Student in October 2016.  While the IEP was to be reviewed annually, it was a "3 Year IEP" lasting through October 2019.

14.    The IEP provided, in relevant part, as follows:

a.  The Student "requires help in engaging in the educational process that lies outside his immediate interest. Emotionally he has very little ability to cope with anxiety that rises within him when asked to perform a task outside of his singular focus."

b.  The Student "is impacted by PANS which causes him to experience anxiety and prevents him from being able to function in large group settings. His disorder also impacts his ability to engage in subject matters that are not of his interest."

c.  The Student "needs support to help him engage in tasks that are outside of his area of interest and in an educational setting."

d.  "Social work services will be needed to support his goal of participating in the classroom and group environment engaging in activities not of his choosing."

e.  The Student "has been known to have autoimmune encephalitis, motor/vocal tics and some rage. He has a hard time and can be very impulsive and if he does not get what he wants it can turn to rage. He has major behavioral issues at times he can be self-abusive and bang his head. While doing the evaluation he

3

did have a behavioral episode where he began throwing items, screaming/fussing, and bit the mother's hand and would not let go. He will attempt to spit at you if he does not know you."

f. The Student "appears to have no fear of getting hurt."

g. The Student "has a diagnosis of 'Pediatric Acute Neuropsychological Syndrome (PANS).' A brief history included 'abrupt onset vocal tics/rage/eating restrictiveness and anxiety.' The severity of illness was described as 'relapsing/remitting can be extremely severe, can abate with treatment.'"

h. The Student's "medical diagnosis does have an adverse impact on his educational performance with regard to social and emotional functioning during events."

i. "Teacher Consultant from the PI/OHI Department to provide support to staff on understanding the impact [The Student's] diagnosis may have on his educational performance."

j. The Student had a "Behavior" goal that involved him being able to engage "without losing self-control."

15. At all relevant times, the Student has been a child with a disability who is eligible to receive services under the IDEA.

16. In 2018, the Student enrolled in second grade at CSA.

17. As a public school, CSA is subject to the IDEA.

18. In June 2018, J.R. informed CSA's principal that the Student was diagnosed with PANDAS/PANS and had a discussion regarding the possibility of shortened school days.

19. In July 2018, J.R. submitted enrollment paperwork to CSA that noted the Student's diagnosis of PANDAS was a medical concern that required more space to describe than was available on the form.

20. In July 2018, J.R. submitted enrollment paperwork to CSA that expressly indicated the Student had previously received special services.

4

21.     In July 2018, J.R. submitted enrollment paperwork to CSA that expressly indicated the Student was eligible for special education as OHI.

22.     In July 2018, J.R. submitted enrollment paperwork to CSA that expressly indicated the Student had an IEP from September 2016.

23.     In August 2018, J.R. informed several CSA teachers that the Student was diagnosed with PANDAS/PANS and expressed concerns about his transition to CSA.

24.     In September 2018, J.R. submitted paperwork to CSA that expressly indicated he had an "IEP w/ Detroit Public Schools".

25.     In September 2018, J.R. submitted paperwork to CSA that expressly indicated he had "not had success with formal schooling. Struggles with collaboration, cooperation.  Easily frustrated when things are not what he expects, perfectionism.  Has PANS-induced OCD . . . ."

26.     Despite the foregoing, CSA concluded the Student had no IEP from 2016 and the Parents had somehow made a mistake when they said otherwise.  CSA reached this erroneous conclusion without contacting J.R. to clarify the matter or searching the state-provided database of enrollment records to determine if the Student had, in fact, been enrolled at DPSCD as J.R. had indicated.

27.     Despite the foregoing, CSA inexplicably contends there was no indication that the Student needed special education services.

28.     On September 4, 2018, the Student began second grade at CSA without any special education or related services.

29.     On September 4, 2018, the Student began second grade at CSA without any plan to address the potential for rage and major behavioral issues as noted in the IEP.

30.     On October 2, 2018, the Student and a member of CSA's staff engaged in a violent altercation which lasted "for almost one hour."

31.     The incident on October 2, 2018, involved "rage" and constituted a "major behavioral issue" as described in the Student's IEP.

32.     Upon returning home on October 2, 2018, the Student soiled himself and slept for an exceedingly long period of time – both of which were exceedingly uncharacteristic behaviors for the Student.

33.     As of October 2, 2018, CSA was not implementing the IEP from DPSCD.

34.     As of October 2, 2018, CSA was not implementing any other IEP for the Student.

35.     As of October 2, 2018, CSA was not in the process of evaluating the Student or creating an IEP for the Student.

36.     As of October 2, 2018, CSA had no written plan for how to appropriately address the Student's PANDAS/PANS, including a behavior intervention plan.

37.     As of October 2, 2018, CSA had conducted no training regarding how to appropriately address the Student's PANDAS/PANS.

38.     Following the incident on October 2, 2018, CSA informed the Parents that the Student – a then seven year old boy – could be charged with a crime.

39.     Following the incident on October 2, 2018, CSA began proceedings to expel the Student from school.

40.     Following the incident on October 2, 2018, CSA made a groundless report of wrongdoing by the Parents to Children's Protective Services, which was ultimately investigated and determined to be unsubstantiated.

41.     As a result of CSA's failure to provide the Student with an IEP or plan in any way for his PANDAS/PANS – including the predicted "rage" and "major behavioral issues" -- the Student was denied an appropriate education, most notably in conjunction with the events of October 2, 2018, and their aftermath.

42.     The ALJ rendered his Decision and Order on March 15, 2021 ("Decision and Order"). The Decision and Order is attached as Exhibit A.

43.     In the Decision and Order, the ALJ concluded that CSA had no indication the Student needed special education services.

44.     In the Decision and Order, the ALJ concluded the Student was not denied FAPE due to CSA's failure to implement the IEP from DPSCD or services comparable to it.

45.     In the Decision and Order, the ALJ concluded the Student was not denied FAPE due to CSA's failure to design and implement a new IEP.

46.     In the Decision and Order, the ALJ concluded CSA was not derelict in its obligation to secure the Student's records, including the IEP from DPSCD.

47.     In the Decision and Order, the ALJ concluded the Student was not denied an appropriate education.

48.     Believing the ALJ's decision to be legally and factually flawed, the Student and his Parents now ask this Court to overturn the ALJ's decision, find the Student was, in fact, denied FAPE, and to award them proper relief under IDEA as well as pursuant to the additional claims set forth below.

## V.  CLAIMS

**COUNT I:  APPEAL OF ALJ DECISION AND ORDER AS TO VIOLATIONS OF THE INDIVIDUALS WITH DISABILITIES IN EDUCATION ACT, 20 U.S.C. § 1400 *et seq.***

49.     Plaintiff's incorporate, by reference, the allegations contained in Paragraphs 1 through 48 of this Complaint as if fully set forth therein.

50.     CSA failed to comply with the substantive and procedural requirements of IDEA in regard to A.W.

51.     By way of example, "[a]t the beginning of each school year, each public agency must have in effect, for each child with a disability within its jurisdiction, an IEP, as defined in § 300.320." 34 CFR § 300.323(a).  CSA did not have an IEP in effect for the Student at the beginning of the 2018-2019 school year.

52.     By way of example, CSA did not "promptly obtain" the Student's prior IEP from DPSCD.  34 CFR § 300.323(g)(1).

53.     By way of example, the Student was a child with a disability who transferred to CSA from within the state, yet CSA did not provide services comparable to those in the IEP from DPSCD, adopt the IEP from DPSCD, or develop, adopt, and implement a new IEP.  34 CFR § 300.323(e).

54.     CSA failed to provide A.W. a free and appropriate public education ("FAPE") as required by the IDEA.

55.     The ALJ's decision was legally and factually flawed and should be overturned.

56.     CSA's failure to provide A.W. with FAPE entitles Plaintiffs to relief, including, but not limited to, compensatory education, equitable relief, an award of their attorney fees, and all other appropriate relief.

**COUNT II:  VIOLATIONS OF THE REHABILITATION ACT, 29 U.S.C. § 794 *et seq.***

57.     Plaintiff's incorporate, by reference, the allegations contained in Paragraphs 1 through 56 of this Complaint as if fully set forth therein.

58.     Section 504 prohibits public schools from discriminating against individuals with disabilities. Specifically, it prohibits public schools from excluding students with disabilities from participating in or receiving the benefits of a school's services, programs, or activities, and such exclusion constitutes disability discrimination. 29 U.S.C. § 794(a). Accordingly, each student with a disability must be provided access to all programs provided to non-disabled students. 29 U.S.C. § 794; 34 C.F.R. § 104.21.

59.     Furthermore, Section 504 requires that each disabled student be provided reasonable accommodations and modifications designed to provide meaningful access to educational benefits, or as necessary to avoid discrimination on the basis of disability. 34 C.F.R. § 104.12; 34 C.F.R. § 104.44.

60.     CSA discriminated against A.W. on the basis of his disability by failing to provide him with FAPE and/or reasonable accommodations.

61.     CSA's violations of Section 504 entitle Plaintiffs to relief, including, but not limited to, compensatory education, equitable relief, damages, an award of their attorney fees, and all other appropriate relief.

**COUNT III:  VIOLATIONS OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101 *et seq.***

62.     Plaintiff's incorporate, by reference, the allegations contained in Paragraphs 1 through 61 of this Complaint as if fully set forth therein.

63.     Title II prohibits public schools from discriminating against individuals with disabilities. Specifically, it prohibits public schools from excluding students with disabilities from participating in or receiving the benefits of a school's services, programs, or activities, and such exclusion constitutes disability discrimination. 42 U.S.C. § 12132. Accordingly, each student with

9

a disability must be provided access to all programs provided to non-disabled students. 42 U.S.C. § 12132.

64.     Furthermore, Title II requires that each disabled student be provided reasonable accommodations and modifications designed to provide meaningful access to educational benefits, or as necessary to avoid discrimination on the basis of disability. 28 C.F.R. § 35.130(b)(7).

65.     CSA discriminated against A.W. on the basis of his disability by failing to provide him with FAPE and/or reasonable accommodations.

66.     CSA's violations of the ADA entitle Plaintiffs to relief, including, but not limited to, compensatory education, equitable relief, damages, an award of their attorney fees, and all other appropriate relief.

## VII.  REQUESTED RELIEF

A.      Issue a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, that CSA failed to provide A.W. with FAPE in the least restrictive environment;

B.      Vacate the Decision and Order of the ALJ;

C.      Order CSA to provide A.W. with compensatory educational services;

D.      Award monetary damages to Plaintiffs;

E.      Order CSA to pay Plaintiffs' reasonable attorney fees and costs for this action; and

F.      Order any other and further relief, both legal and equitable, this this Court may deem just and proper.

Dated: June 11, 2021

Respectfully submitted,

*/s/ Mark D. Scudder*

Jason T. Clagg, Esq.
Mark D. Scudder, Esq.
BARNES & THORNBURG LLP
888 S. Harrison Street, Suite 600
Fort Wayne, Indiana 46802
Telephone: (260) 423-9440
Facsimile: (260) 424-8316
E-mail: jason.clagg@btlaw.com
E-mail: mark.scudder@btlaw.com

Attorneys for Plaintiff G.W. & J.R. o/b/o A.W.